# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL WAYNE GROGAN,

Plaintiff,

v.

GONZALEZ, *et al.*,

Defendants.

Case No. 1:25-cv-01986-BAM (PC)

FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY A COURT ORDER, AND FAILURE TO PROSECUTE

(ECF Nos. 11, 14)

**FOURTEEN (14) DAY DEADLINE**

## I. Background

Plaintiff Daniel Wayne Grogan ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983

On May 27, 2026, the Court screened Plaintiff's complaint and found that it failed to comply with Federal Rule of Civil Procedure 8 and failed to state a cognizable claim upon which relief may be granted. (ECF No. 11.) The Court granted Plaintiff leave to file a first amended complaint or notice of voluntary dismissal within 30 days. (*Id.*) The Court expressly warned Plaintiff that failure to comply with the Court's order would result in a recommendation for dismissal, with prejudice, for failure to state a claim, failure to obey a court order, and for failure to prosecute. (*Id.*)

In lieu of filing an amended complaint, Plaintiff filed a response to the Court's screening

order. (ECF No. 12.) The Court construed the response as a motion for discovery and for preliminary injunction. (ECF No. 14.) On July 7, 2026, the Court denied the motion for discovery without prejudice and issued findings and recommendations that recommended the motion for preliminary injunction be denied. (*Id.*) The Court also granted Plaintiff an extension of time to file a first amended complaint and directed Plaintiff to file his first amended complaint or a notice of voluntary dismissal within 30 days. (*Id.*) The Court again warned Plaintiff that failure to comply with the Court's order would result in a recommendation for dismissal, with prejudice, for failure to state a claim, failure to obey a court order, and for failure to prosecute. (*Id.*)

On August 5, 2026, the District Court adopted the findings and recommendations and denied Plaintiff's construed motion for preliminary injunction. (ECF No. 15.)

As of the date of this order, Plaintiff has failed to file an amended complaint or otherwise communicate with the Court, and the deadline to do so has expired.

## II. Failure to State a Claim

### A. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**B. Plaintiff's Allegations**

Plaintiff is currently housed at R.J. Donovan Correctional Facility. The events in the complaint are alleged to have occurred while Plaintiff was housed at the California Substance Abuse Treatment Facility ("CSATF"). Plaintiff names the following defendants: (1) Officer F. Gonzalez; (2) Officer G. Zepeda; (3) Lieutenant A. Palafox; and (4) CDCR.

Claim I

Plaintiff alleges: Correctional Officer F. Gonzalez confiscated Plaintiff's "Gardian 2000 Hinged Knee Brace." (ECF No. 1 at 3.) "Wreckless deliberate indifference toward my A.D.A. disability, as a means to chastise, and permanently deprive me of my medical appliance DME. While acting under the color of state law imposed wreckless indifference against my A.D.A. disability by inflicting undue pain and suffering against my disability." (*Id.* (unedited text).)

Claim II

Plaintiff alleges: Correctional Officer G. Zepeda confiscated Plaintiff's "Gardian 2000 Hinged Knee Brace." (ECF No. 1 at 4.) "Wreckless deliberate indifference towards my A.D.A. disability as a means to chastise, and permanently deprive me of medical appliance DME. While acting under the color of state law imposed wreckless indifference against my A.D.A. disability by inflicting undue pain and suffering, against my disability." (*Id.* (unedited text).)

Claim III

Plaintiff alleges: Lieutenant A. Palafox "supervised, confiscated [my] 'Gardian 2000 Hinged Knee Brace' with wreckless deliberate indifference as a means to chastise, and permanently deprive me of my medical appliance DME. While acting under the color of state law imposed wreckless indifference against my A.D.A. disability by inflicting undue pain and

suffering against my disability." (ECF No. 1 at 5 (unedited text).)

Statement

Plaintiff provides a brief synopsis of his "plight and spiralling [sic] decline within [his] prison medical treatment." (ECF No. 1 at 6.) In 2018, Plaintiff was sent to Vacaville State Prison as a third striker. He is medically designated as D.P.W. and wheelchair bound for over ten years. Vacaville State Prison is a medical facility. While the years rolled by, Plaintiff tried to argue his Superior Court case within the courts by habeas corpus so as practice he refused all pain medications. They act as a neuro inhibitor and have a negative impact on his cognitive abilities with thinking and reasoning. His constantly refusing pain medications seemed to offend the prison doctors whose specialization is in the field of prescriptive drug regimentation. Plaintiff claims they intentionally hindered his request for referrals for an orthopedic surgeon specialist year after year for his injuries, but they still provided him with skin cancer treatments, so he cooperated with prison medical staff.

In 2022, Plaintiff experienced a violent assault by a non-medical inmate. Out of self-defense, Plaintiff broke four of his bones within his right hand and his right eyelid got bitten off. The doctor stitched Plaintiff's eyelid back on but neglected to provide appropriate treatment on his hand. Plaintiff had a classic boxer's fracture and needed surgical pins placed into his fingers in order to realign the bones within his fingers but instead of providing him with surgery for this and placing a cast on his hand, the correctional officers placed him into Ad-Seg. A few days later, the doctor came to visit Plaintiff in Ad-Seg seemingly just to ridicule him. Sarcastically, he asked Plaintiff with a big smile on his face, "You want some pain medications now don't you?!" (ECF No. 1 at 6.) Plaintiff still refused medications. Months later, while at an Ad-Seg classification hearing, Plaintiff had a bad argument with the Associate Warden regarding all of this. As a result, the classification panel became very upset with Plaintiff and ordered him transferred out to R.J.D., which is not a medical facility.

In 2022, Vacaville State Prison transferred Plaintiff R.J.D., as it turned out, "as a direct replacement GP-D.P.W. for the one that was just murdered on the one and only general population yard that they have there for Level III." (ECF No. 1 at 6.) The last person that came

from Vacaville "as a white ethnic group GP-D.P.W. like [Plaintiff] just had." (*Id.*) The inmates there smashed his head in with a rock just shortly before Plaintiff got there. He died on the yard sitting in his wheelchair. Upon Plaintiff's arrival at R.J.D., custody staff wanted him to sign a waiver before he was housed in the same GP-Yard, same building, same cell "as the guy who got his head smashed," thereby relieving them of their responsibility of his imminent danger of him being assaulted. (*Id.* at 7.)

While at R.J.D. shortly after he arrived, Plaintiff was involved in a cell fight because of the inmates' militant views of inmates who are transferred there from a non-designated prison like Vacaville. The housing unit tower correctional officer intentionally let two militant inmates into Plaintiff's D.P.W. cell in order to jump him. Plaintiff suffered a broken arm and a broken back. X-rays were taken, but medical staff refused to provide him with any treatment for the broken bones. Subsequently, Plaintiff "602 both medical staff for 'deliberate indifference'" and he "602 custody staff for 'aiding and abetting'" an assault on his person within his A.D.A. D.P.W. single occupant cell. (ECF No. 1 at 7.)

Plaintiff lay in Ad-Seg for months unable to move from the pain from his broken back while his injuries slowly healed up on their own while completely untreated or assisted by R.J.D. medical staff. From what Plaintiff now believes to be standard practice, there have been reprisals from his 602s ever since Vacaville, then compounding reprisals at R.J.D. The doctors have since refused to offer any further treatment for his skin cancer. Plaintiff's body has now become completely riddled with skin cancer since 2022. He claims this is a slow death sentence for him by a preventable abnormality, because of the prison doctors' continued course of deliberate indifference towards him and because they have already proven to be adversarial with their intent against his medical needs on multiple occasions and intentionally placed his health and safety at risk. Plaintiff therefore has "respectfully declined any further invalvement with prison medical staff sense 2023." (ECF No. 1 at 7 (unedited text).)

Plaintiff again was transferred to another non-medical facility in 2024, CSATF, which is a Level II facility. Plaintiff claims that to make matters worse, the place is rampantly filled with illicit drug use by inmates. Plaintiff does not even use drugs.

On July 17, 2025, Plaintiff was violently assaulted by a non-medical inmate while he was sitting alone watching television in his wheelchair. Plaintiff's head was split open and he was sent out to a local hospital for multiple stitches in his face. While being processed through A.T.C. medical for this incident, custody staff at CSATF confiscated Plaintiff's "Gardian 2000 Hinged Knee Brace" from him. (ECF No. 1 at 8.) Plaintiff again was placed into Ad-Seg. Plaintiff claims that "within the nine years that I have already served within this prison term I have never once had my medical appliance hinged knee brace taken away from me, even during the multiple stays within Level III facility Ad-Seg in my most recent past." (*Id.*)

Plaintiff believes that it is out of retaliation and reprisal that someone has intentionally tried to alter his medical D.M.E. designation and this why he is asking for injunctive relief against these C.D.C.R. staff because they are intentionally discriminating against his A.D.A. disability and now they hold his hinged knee braces as hostage. Plaintiff asserts that their agenda does not include or provide for his A.D.A. good health and safety. He also asserts that there is reasonable cause to believe that conditions are egregious or flagrant, that they are subjecting residents to grievous harm, and that they are part of a pattern or practice of resistance to residents' full enjoyment of constitutional or federal rights, including Title II of the A.D.A. and Section 504 of the Rehabilitation Act.

<u>Statement of Claim</u>

Plaintiff asserts that he is seeking redress and injunctive relief against Defendant Gonzalez, Zepeda, and Palafox "who have caused [him] to directly subjected to the deprivation of [his] medical appliance and [his] federal constitutional rights while acting under the color of state law imposed wreckless [sic] indifference against [his] A.D.A. disability and misconduct towards [him] with authority of state law." (ECF No. 1 at 9.) He claims violations of the Eighth Amendment and due process violations under the Fifth and Fourteenth Amendments.

Plaintiff alleges; On 7/17/2025 custody staff corrections officers: F. Gonzalez, G. Zepeda, and Lieutenant A. Palafox at CSATF took action against his disability when they wantonly and wrongfully took possession of his $1,200.00 "Gardian 2000 Hinged Knee Brace," claiming it to have been contraband. (ECF No. 1 at 10.) Plaintiff asserts that he has worn this

knee brace for over fifteen years continuously every single day. He contends this medical appliance is absolutely essential in maintaining his right knee structural stability. By them taking possession of his knee brace, it negatively impacts and imperils his health and safety and physical ability to stand and bear weight on his leg because of extensive knee damage. His knee hyperextends excessively beyond the normal range of motion, and this directly imposes a significant amount of constant pain and swelling within his knee joint. Her asserts it is an ongoing hardship against his person and placed him in a position of imminent danger of serious physical injury. Plaintiff asserts that this action was intentionally negligent against his longstanding disability, and it reflects a showing of excessive force against his person, which is by itself cruel and unusual punishment to have permanently deprived him of his hinged knee brace and then to have later destroyed this non-contraband item.

Plaintiff alleges the wanton and intentionally deliberate act of confiscating his knee brace was intended to chastise and punish his person, his health, and his mobility and to cause him to endure undue pain and suffering within his knee joint. Plaintiff claims this action as needless and unconstitutional totally without penological justification to the conditions of confinement or to the safety and security of the institution.

Plaintiff contends that this act counts more in line with the prison officials intentionally intending to cause him malice and discriminate against his longstanding and established A.D.A. needs. He alleges it was a serious deprivation to have confiscated his medical appliance needlessly and it was intended to cause him injury and distress and to deprive him of the minimum civilized measure of his A.D.A. medical necessities with his longstanding and easily verifiable disability.

Plaintiff asserts that prison officials acted with deliberate indifference to this issue by their failure to return his medical appliance to him and it poses an unreasonable risk of further serious damage to his right leg and knee due to his level of already destroyed knee joint cartilage and muscle atrophy, which directly imperils the risk to his future health and safety.

Plaintiff contends that this demonstrates a sufficiently culpable state of mind and challenges the prison officials' intent because now they are claiming months later that his medical

appliance is altogether missing. It is somehow lost, which Plaintiff claims is clearly another act of deliberate indifference towards his medical needs and established A.D.A. status and previous diagnosis as permanently disabled right knee. Plaintiff asserts that all of these facts are easily verifiable through his medical records and past DME from 2008-2025, but seemingly out of intended malice directed towards him, they were ignored. Plaintiff claims the results of which have been harmful enough from this loss to have caused "significant offensiveness" to his dignity, along with elements of both psychological and physical harm to his health and safety, and that directly interferes with his protected liberty and A.D.A. disability interests and to the procedural safeguards of his constitutional rights. (ECF No. 1 at 11.)

Plaintiff seeks injunctive relief, limited monetary relief, punitive damages, and future medical care supervised by the Court.

**C. Discussion**

**Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

Plaintiff's complaint is not a short and plain statement of his claims. Instead, Plaintiff's complaint includes a narrative of his medical history and institutional placements unrelated to the claims in this action. Further, Plaintiff's complaint contains conclusory statements, legal conclusions, and a recitation of the elements of certain claims. This is not sufficient to state a plausible claim for relief. With respect to the named defendants, Plaintiff alleges only that these defendants confiscated his knee brace as contraband. However, these sparse factual allegations, without more, are not sufficient to state a cognizable claim.

**Supervisory Liability**

Although not entirely clear, Plaintiff may be attempting to impose supervisory liability against Lieutenant Palafox. However, liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir.2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

Here, Plaintiff has not adequately alleged that Defendant Palafox participated in or directed the violation or implemented a policy so deficient that it was the moving force of any constitutional violation. Plaintiff alleges that the named defendants confiscated his knee brace and that the brace was lost, but this is not sufficient to demonstrate which defendant was responsible for the confiscation or loss of his knee brace. Simply lumping all named defendants together is not sufficient to state a cognizable claim.

**Eleventh Amendment - CDCR**

Plaintiff has named CDCR as a defendant. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which

seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

As CDCR is immune under the Eleventh Amendment, Plaintiff cannot pursue claims for damages or injunctive relief against the State in this action.

In addition, Plaintiff names each defendant in their "official capacity." (*See* ECF No. 1 at 9.) Plaintiff may not pursue his claims for monetary damages against the named defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991).

**Fifth Amendment**

Plaintiff appears to assert a violation of the Fifth Amendment due process clause. The Fifth Amendment's due process clause only applies to the federal government. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). Since Plaintiff is not proceeding against any federal government employees, he is unable to state a cognizable claim for violation of his rights under the Fifth Amendment.

**Eighth Amendment - Deliberate Indifference to Medical Need**

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate

indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff fails to state a cognizable claim for deliberate indifference to his medical needs or care. Plaintiff alleges that defendants confiscated his specific knee brace as contraband. However, Plaintiff lumps all defendants together and fails to provide factual allegations detailing what happened and who was involved, necessary to state a claim that is plausible on its face. As currently pled, the Court cannot conclude that Plaintiff has stated a cognizable claim for deliberate indifference to his medical needs.

**Eighth Amendment - Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison

officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference ..." *Labatad v. Corr. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer,* 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Objectively, extreme deprivations are required to make out a conditions-of-confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution " 'does not mandate comfortable prisons,' " *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

Plaintiff fails to state a cognizable conditions-of-confinement claim. He does not allege a deprivation denying the minimal civilized measure of life's necessities.

**Eighth Amendment - Excessive Force**

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson*, 503 U.S. at 6-7; *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. *See Whitley*, 475 U.S. at 320-21.

In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. *See Jordan v. Gardner*, 986 F.2d 1521, 1528 n.7 (9th Cir. 1993) (en banc). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321-22.

As currently pled, Plaintiff fails to state a cognizable claim for excessive force in violation of the Eighth Amendment. Plaintiff does not allege the circumstances involving the alleged use of any force.

**Fourteenth Amendment – Due Process**

Insofar as Plaintiff also alleges that defendants wrongfully confiscated his knee brace and then destroyed it, these allegations are not sufficient to support a cognizable due process claim. Prisoners have a protected interest in their personal property. *Hansen v. May,* 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. *See Hudson v. Palmer*, 468 U.S. 517, 532 n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982)); *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985). However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.

Plaintiff alleges that his knee brace was wrongfully confiscated and destroyed (or lost). As this alleged conduct was an unauthorized deprivation of property, due process is satisfied if there is a meaningful post-deprivation remedy available to Plaintiff. *Hudson*, 468 U.S. at 533. Plaintiff has an adequate post-deprivation remedy available under California law. *Barnett v. Centoni,* 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–95). Therefore, Plaintiff fails to allege a cognizable due process claim for the alleged deprivation of his property.

**Americans with Disabilities Act and Rehabilitation Act**

The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2).

While the Rehabilitation Act ("RA") has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo County, Ariz,* 609 F.3d 1011, 1021 (9th Cir. 2010); *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Plaintiff does not state a viable claim under the ADA or Rehabilitation Act. Plaintiff does not allege facts that show he was excluded from participation in, or denied the benefits of, any service or programs offered by the prison because of his disability, or that he was subjected to any type of discrimination by reason of his disability. Additionally, to the extent Plaintiff sues the defendants in their individual capacities, he may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

**Injunctive Relief**

Insofar as Plaintiff seeks injunctive relief, any such request is now moot. Plaintiff is no longer housed at CSATF, where he alleges the incident at issue occurred. Therefore, any injunctive relief he seeks against the officials at CSATF is moot. *See Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

## III. Failure to Prosecute and Failure to Obey a Court Order

### A. Legal Standard

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987)

(dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

**B. Discussion**

Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the Court's order. The Court cannot effectively manage its docket if Plaintiff ceases litigating his case. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendants, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's July 7, 2026 order expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation for dismissal of this action with prejudice. (ECF No. 14.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. As Plaintiff is proceeding *in forma pauperis* in this action, it appears that monetary sanctions will be of little use and the preclusion of evidence

or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

## IV. Conclusion and Recommendation

For the reasons stated, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 17, 2026**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE